A99A2069. CERAMIC & METAL COATINGS CORPORATION
v. HIZER et al.
(529 SE2d 160)

Andrews, Presiding Judge.

Ceramic & Metal Coatings Corporation (CMC) appeals from the trial court's order denying its request for injunctive relief and granting defendant James Hizer's motion for partial summary judgment. The issue on appeal is whether the trial court correctly determined that the restrictive covenant not to compete contained in Hizer's employment agreement with CMC was overbroad and therefore unenforceable. Because we agree that the noncompete clause was overbroad as to territory and scope of activities, we affirm.

This case arose when Hizer quit his job as a sales representative at CMC. Hizer had worked for the company, which makes centrifugal pumps, for 26 years. When efforts to renegotiate the terms of his employment failed, Hizer quit the company and set up a competing business. CMC filed suit for injunctive relief and damages. The trial court denied CMC's motion for a temporary restraining order and granted Hizer's motion for summary judgment, finding the restrictive covenant was overbroad and, therefore, unenforceable.

The restrictive covenant at issue provided as follows:

Employee expressly agrees that he will not, during the term of this Agreement, and for a period of two years immediately following termination of this Agreement for any reason whatsoever, directly or indirectly, for himself or on behalf of, or in conjunction with, any other person, persons, company, partnership or corporation:

A. Call upon any customer, former customer, or entity solicited as a customer, for the purpose of soliciting or selling any products or services which are produced and sold by Company within the territory specified in this Agreement (or any

territory added during the course of the Agreement);

B. Attempt to divert, solicit, or otherwise affect the relationship of the Company with any customer, former customer, or person identified as a prospective customer within the territory which is the subject of this Agreement (or any territory · added during the course of the Agreement);

C. Divulge, publish or otherwise misuse any list of present, former or prospective customers, trade secrets or other confidential or specialized information or data learned, acquired or coming into his knowledge pursuant to his employment hereunder;

D. Own, manage, operate, control, be employed by, participate in, or be connected in any manner with any business similar to the type of business conducted by Company at the time of termination of this Agreement, anywhere within the territory identified herein (or any territory added during the course of the Agreement);

E. Induce or attempt to induce any person affiliated with the Company in any way to terminate such relationship for any reason or purpose whatsoever, specifically including hiring or attempting to hire such individual as an employee or a representative for any competing concern.

Georgia courts have traditionally applied close scrutiny to employment contracts containing restrictive covenants and have upheld them only when the covenant is strictly limited in time, territorial effect, and activities prohibited. *Beckman v. Cox Broadcasting Corp.*, 250 Ga. 127, 129 (296 SE2d 566) (1982).

While a contract in general restraint of trade or which tends to lessen competition is against public policy and is void (1983 Ga. Const., Art. III, Sec. VI, Par. V (c); OCGA § 13-8-2), a restrictive covenant contained in an employment contract is considered to be in partial restraint of trade and will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public. Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all the other circumstances. A three-element test of duration, terri-

torial coverage, and scope of activity has evolved as a helpful tool in examining the reasonableness of the particular factual setting to which it is applied.

(Citations and punctuation omitted.) *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992).

Applying this three-element test to the agreement before us, we find two clauses of the contract are unreasonably overbroad.

1. The covenant is overbroad in terms of territorial coverage. CMC claims that the territory referred to in the agreement is all of Georgia and Florida. But, the undisputed evidence is that Hizer sold to customers in only five counties in Florida and no more than three counties in Georgia. Although this Court will accept as prima facie valid a covenant which restricts the employee from doing business in the territory in which he was employed, the Court "will not accept as prima facie valid a covenant related to the territory where the employer does business where the only justification is that the employer wants to avoid competition by the employee in that area." (Punctuation omitted.) *Rollins Protective Svcs. Co. v. Palermo*, 249 Ga. 138, 140 (287 SE2d 546) (1982). Moreover,

> the prohibition against post-employment solicitation of *any* customer of the employer located in a specific geographic area is an unreasonable and overbroad attempt to protect the employer's interest in preventing the employee from exploiting the personal relationship the employee has enjoyed with the employer's customers.

(Emphasis in original.) *W. R. Grace*, supra at 466-467.

Also, because of the language referring to "any territory added during the course of the Agreement," Hizer could not determine with any certainty at the time he signed the contract the extent of the prohibition. *Britt v. Davis*, 239 Ga. 747, 749 (238 SE2d 881) (1977); *Orkin Exterminating Co. v. Pelfrey*, 237 Ga. 284, 285 (227 SE2d 251) (1976); *Durham v. Stand-By Labor &c.*, 230 Ga. 558, 562 (198 SE2d 145) (1973). This Court has held that "a territorial limitation not determinable until the time of the employee's termination invalidates the provision and the entire agreement." *Jarrett v. Hamilton*, 179 Ga. App. 422, 424-425 (346 SE2d 875) (1986).

2. The covenant is also overbroad in the scope of activity prohibited. The covenant provides that Hizer may not

> [o]wn, manage, operate, control, be employed by, participate in, or be connected in any manner with any business similar to the type of business conducted by Company at the time of termination of this Agreement, anywhere within the terri-

tory identified herein (or any territory added during the course of the Agreement).

This imposes a greater limitation on the employee than is necessary because it is not tailored to the job Hizer performed for CMC; instead, he is prohibited from being connected in any way with a similar business. As a result, this restriction is broader than necessary to protect CMC. *Puritan/Churchill Chem. Co. v. Eubank*, 245 Ga. 334, 335 (265 SE2d 16) (1980); *Browning v. Orr*, 242 Ga. 380, 381 (249 SE2d 65) (1978); *American Gen. Life &c. Ins. Co. v. Fisher*, 208 Ga. App. 282 (430 SE2d 166) (1993); *Jarrett,* supra at 424.

3. Further, the severability clause in the contract does not save it. This Court has rejected the "blue pencil theory of severability" with regard to employment contracts, and we will not sever a broader more restrictive provision so as to leave the narrower valid one. *Browning*, supra at 381. This is true whether or not there is a severability clause in the contract. *Puritan/Churchill*, supra at 335; *Richard P. Rita Personnel &c. v. Kot*, 229 Ga. 314 (191 SE2d 79) (1972).

4. CMC also argues that the trial court erred in treating this as an employment agreement between a company and its employee when it was an agreement between a closely held corporation and its shareholder/employee. We disagree. Although Hizer did buy stock in the closely held corporation during his employment, he did not own any stock when he signed this agreement. Therefore, the trial court correctly determined that this agreement was not one involving partnerships or their equivalents and was not ancillary to the sale of a business.

5. CMC claims that even if the restrictive covenant is too broad, the trial court erred in not upholding Section 6, the nondisclosure clause. But, CMC points to no evidence from which this Court could determine that Hizer violated the nondisclosure provision.

In its order, the trial court states that it relied on the arguments presented at the hearing; however, no hearing transcript was filed. Therefore, the only evidence before us is Hizer's deposition testimony in which he consistently denies violating any of the nondisclosure provisions, although he freely admits that he violated the covenant not to compete. Therefore, CMC has not shown any harm caused by the trial court's refusal to consider the nondisclosure provision as separate from the noncompete provision.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED JANUARY 31, 2000 —
RECONSIDERATION DENIED FEBRUARY 16, 2000 —

*Parks, Chesin & Miller, Allan L. Parks, Jr., Mary A. Walser*, for appellant.

*William G. Leonard*, for appellees.