## A00A0025. SANFORD v. RDA CONSULTANTS, LTD.
### (535 SE2d 321)

ELLINGTON, Judge.

Robert M. Sanford appeals from a Cobb County Superior Court order granting an injunction against him in favor of his former employer, RDA Consultants, Ltd. The trial court issued the injunction following its determination that Sanford had violated a restrictive covenant in his employment contract with RDA. After reviewing the record on appeal, this Court finds that portions of both the covenant and the injunction are unenforceable under Georgia law, and we reverse those portions of the trial court's order.

RDA is a software development consulting services company that conducts business in five states, including Georgia, and the District of Columbia. RDA opened its Atlanta office in March 1998 and hired Sanford in May 1998. On May 27, 1998, Sanford signed an employment contract that contained the following provision:

As part of this agreement to accept employment, you agree that full rights to any and all work performed and products developed by you for fee or compensation during your tenure with the firm belong to RDA. Further, any information pertaining to clients such as their plans, products, and financial information should be considered proprietary information and should not be disclosed to any persons not employed by RDA. Employment is at will and in the case of employment

---

[3] Id. at 714.

termination, for any reason, at the decision of either party, you agree for a period of one year from the date of termination not to accept employment with or provide services, competitive to RDA's own, to any current RDA customers or customers RDA has worked with during the two years prior to employment termination and not to attempt to employ or assist any other person in employing or soliciting for employment any employee employed by RDA.

During his employment with RDA, Sanford used RDA's software product, ROOP,[1] and was given videos, written documents, and other supporting materials about the product. Sanford's supervisor testified that RDA spent between $500,000 and $1,000,000 over approximately four years while developing ROOP.

On December 14, 1998, Sanford sent his supervisor a letter of resignation by electronic mail. Within weeks, Sanford started his own company and was consulting with one of RDA's customers, UPS. Sanford also contacted RDA employees about leaving the company.

RDA notified Sanford that his actions were in violation of his employment agreement. When Sanford refused to discontinue his activities, RDA filed suit to enforce the agreement through an injunction and for breach of contract. RDA also moved for a temporary restraining order against Sanford.

On April 1, 1999, the trial court conducted a hearing and, after considering additional evidence submitted by the parties, issued its order on May 26, 1999. The trial court made the following factual findings and legal conclusions: (1) the restrictive covenant in Sanford's employment contract was reasonable, even absent a territorial restriction, citing *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464 (422 SE2d 529) (1992); (2) Sanford performed work for an RDA customer and directly competed with an RDA bid for work with another existing RDA customer; (3) Sanford talked with RDA employees about resigning and working with him in the future; and (4) ROOP was proprietary information belonging to RDA, and Sanford violated the restrictive covenant by using ROOP after his resignation from RDA.

Based upon such findings, the trial court issued an injunction, "in accordance with the restrictive covenant," prohibiting Sanford from the following for a period of one year from the date of his employment termination with RDA:

(1) performing services, submitting proposals to, and servicing the following customers of [RDA] with whom [Sanford]

---

[1] "ROOP" is an acronym for "RDA's Object Oriented Process."

rendered services to in the Atlanta office, to wit: UPS, HBOC, RMC, Cox Interactive Media, AT&T, and Mercedes Benz Credit Corporation; (2) soliciting or attempting to employ any of [RDA's] present employees; (3) using or disclosing any of [RDA's] proprietary materials, including, but not limited to, ROOP; and (4) using improper means to interfere with business opportunities for Plaintiff.

Sanford appeals from the trial court's order granting this injunction. *Held*:

1. In his first enumeration, Sanford claims that the trial court erred as a matter of law in restraining him from performing services, submitting proposals to, and servicing RDA's customers. We agree, because the noncompetition covenant as written was unenforceable under Georgia law.

> Because covenants against competition in employment agreements are in partial restraint of trade, they are upheld only when strictly limited, both in time and geographical effect, and when the restrictions are otherwise reasonable, considering the business interests of the employer needing protection and the effect of the restrictions on the employee.

(Citation omitted.) *Wolff v. Protege Systems*, 234 Ga. App. 251, 252 (1) (a) (506 SE2d 429) (1998). Georgia's courts use a three-element test of duration, territorial coverage, and scope of activity as a "helpful tool" in examining the reasonableness of a restrictive covenant in an employment contract, based upon the particular factual setting to which it is applied. *W. R. Grace & Co. v. Mouyal*, supra at 465 (1). Applying this test to the noncompetition clause before us, we find that the lack of limitations on territorial coverage and scope of activity makes the provision unreasonably overbroad and, therefore, unenforceable as a matter of law.

The evidence presented at the hearing showed that, at the time Sanford resigned, RDA had approximately forty-five customers in five states and the District of Columbia. The plain language of the agreement prohibited Sanford from working for *any* of its current customers for one year, as well as any customer served by RDA during the two years prior to Sanford's resignation. Even though RDA has repeatedly asserted otherwise, this provision prohibited Sanford from seeking employment with these customers *regardless* of whether he served the customer during his employment with RDA. "[A] prohibition against doing business with *any* of an employer's customers, whether or not a relationship existed between the customer and the former employee, is overbroad." (Emphasis in origi-

nal.) *W. R. Grace & Co. v. Mouyal*, supra at 467 (2), n. 2. See also *American Software v. Moore*, 264 Ga. 480, 483 (1) (448 SE2d 206) (1994).

Further, at the time he signed the agreement, Sanford could not determine with any certainty the extent of the noncompetition provision. See *Fuller v. Kolb*, 238 Ga. 602, 603-604 (234 SE2d 517) (1977) (the problem with this type of covenant is the lack of notice to the former employee regarding whether he will be in violation of the covenant by accepting certain employment opportunities). Since any territorial limitations on his future employment opportunities could not be determined until Sanford resigned from RDA, the provision is invalid. *Ceramic &c. Corp. v. Hizer*, 242 Ga. App. 391, 393 (1) (529 SE2d 160) (2000); *Harville v. Gunter*, 230 Ga. App. 198, 200 (1) (495 SE2d 862) (1998).

Finally, the noncompetition provision was overbroad and unenforceable as to the scope of employment, because it prohibited Sanford from obtaining employment with any RDA customer in any capacity.[2] *Nat. Settlement Assoc. &c. v. Creel*, 256 Ga. 329, 332 (3) (c) (349 SE2d 177) (1986); *Wright v. Power Indus. Consultants*, 234 Ga. App. 833, 834-835 (2) (508 SE2d 191) (1998).

Therefore, we reverse the portion of the trial court's order granting an injunction based on the invalid noncompetition covenant. We will address Sanford's concerns about the remaining covenants, however, as the covenants are not dependent upon this invalid noncompetition clause. *Wright v. Power Indus. Consultants*, 234 Ga. App. at 834 (1); *Sunstates Refrigerated Svcs. v. Griffin*, 215 Ga. App. 61, 62 (2) (449 SE2d 858) (1994).

2. Sanford claims that the trial court erred in prohibiting him from soliciting or attempting to employ any of RDA's present employees. Under the facts and circumstances of this case, we find this covenant to be reasonable in scope and duration. See *Wright v. Power Indus. Consultants*, 234 Ga. App. at 839 (5). Therefore, we uphold the trial court's finding that it is enforceable and its injunction based thereon.

3. Sanford contends that the trial court erred in enjoining him from using or disclosing any of RDA's proprietary materials, including but not limited to ROOP. This injunction was based upon an ambiguous portion of the agreement, which stated in part as follows:

---

[2] RDA's assertion that the scope of employment is, in fact, limited to "competitive" employment opportunities is without merit in that it ignores the plain language of the covenant, which uses the disjunctive word "or" to prohibit Sanford from accepting employment with *or* providing services to RDA customers. The adjective "competitive" clearly modifies only "services." This Court also notes that the trial court's injunction failed to limit the employment prohibitions therein to "competitive" services.

"any information pertaining to clients such as their plans, products, and financial information should be considered proprietary information and should not be disclosed to any persons not employed by RDA."

(a) Pretermitting the issue of whether this provision is a valid nondisclosure agreement between the parties, the trial court properly enjoined Sanford from using or disclosing ROOP. The trial court found that RDA had proprietary interests in ROOP that required protection; that Sanford had access to RDA's trade secrets, including ROOP, through his employment with RDA; and that Sanford had already utilized RDA's proprietary products to compete with RDA for their customers. These findings are supported by the record.

> Trade secrets are entitled to protection so long as competitors fail to duplicate them by legitimate, independent research. *Even without an express restrictive covenant*, one of the implied terms of a contract of employment is that the employee will not disclose a trade secret learned during his employment, to a competitor of his former employer. *It is not relevant whether or not a valid express written contract or restrictive covenant was entered into*.

(Citation omitted; emphasis supplied.) *Thomas v. Best Mfg. Co.*, 234 Ga. 787, 789 (3) (218 SE2d 68) (1975). The trial court's decision to enjoin Sanford from using or disclosing RDA's proprietary interests in ROOP was not an abuse of discretion. See *Wright v. Power Indus. Consultants*, 234 Ga. App. at 838 (4); see also OCGA § 9-5-8 (the granting of injunctive relief is a matter of discretion for the trial court).

(b) The injunction issued by the trial court, however, prohibited Sanford from "using or disclosing any of [RDA's] proprietary materials, including, but not limited to, ROOP." This provision lacks sufficient detail to fully apprise Sanford of which materials may not be used or disclosed and, therefore, fails to comply with OCGA § 9-11-65 (d).[3] See *Wolff v. Protege Systems*, 234 Ga. App. at 254 (1) (c); *Ward v. Process Control Corp.*, 247 Ga. 583, 584 (3) (277 SE2d 671) (1981). As such, this portion of the injunction is invalid and must be reversed.

4. (a) The portion of the injunction prohibiting Sanford from "using improper means to interfere with business opportunities for

---

[3] OCGA § 9-11-65 (d) reads as follows:
Every order granting an injunction and every restraining order shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action.

RDA" is also invalid under OCGA § 9-11-65 (d), as it fails to sufficiently describe the behavior prohibited by the term "improper means."

(b) Sanford also claims that the effective dates of the injunction are uncertain under OCGA § 9-11-65 (d), because he continued to work for RDA after he tendered his resignation. It is undisputed, however, that Sanford tendered his resignation on December 14, 1998, effective immediately. The injunction stated that it was effective for one year from the date of Sanford's employment termination. By specifically referring to the event of Sanford's employment termination, we find that the injunction describes the starting date in sufficient "reasonable detail" to comply with OCGA § 9-11-65 (d).

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ruffin, J., concur.*

DECIDED JUNE 1, 2000.

*David C. Butler*, for appellant.
*Weinstock & Scavo, Michael Weinstock, Elizabeth M. Jaffe*, for appellee.