A00A2475. HULCHER SERVICES, INC. v. R. J. CORMAN
RAILROAD COMPANY, LLC et al.
(543 SE2d 461)

ELDRIDGE, Judge.

Hulcher Services, Inc. appeals from an adverse declaratory judgment voiding a noncompetition restrictive covenant with Daniel J. Keating, a former employee, and his new employer, R. J. Corman Railroad Company, LLC. We affirm the determination of the trial court that the covenants as to territory, work capacity, and solicitation of customers were flagrantly overbroad and unreasonable under Georgia law for the following reasons.

Keating began work with Hulcher in 1984 in Illinois. However, until December 2, 1998, Hulcher had not required for Keating an employment agreement with a noncompete provision.

Hulcher is in the business of performing emergency disaster remediation services for railroads and industries with rail siding and rail yards in the lower 48 states, Canada, and Mexico. Although Keating began work for Hulcher in Illinois, from 1994 until 1997 he worked in Memphis, Tennessee, doing work only in parts of Tennessee and of Kentucky; then, until he left in 1999, he worked for Hulcher as Senior Division Manager in Atlanta, Georgia. He had

---

responsibility for the entire states of Georgia and Florida but did not work in areas of these states without main rail lines. He never worked in Ohio.

The noncompete provision prohibited Keating from working for three years in all of Florida, Georgia, Illinois, Ohio, or Tennessee in any capacity.

On June 1, 1999, Keating left Hulcher and went to work for Corman, a direct competitor. Initially, Keating worked in Kentucky and then Minnesota until March 2000 when he was transferred to Atlanta.

On March 7, 2000, Corman instituted this declaratory judgment action against Hulcher to have the covenant voided. On April 10, 2000, Hulcher moved to dismiss the action on the grounds that Corman lacked standing. On April 25, 2000, Keating was joined in the action. However, on April 7, 2000, Hulcher filed suit against Keating in the 367 Texas District Court, obtaining an ex parte restraining order without service on any party to enforce the covenant. This Texas suit was subsequently removed to the United States District Court for the Eastern District of Texas. On May 16, 2000, the United States District Court is reported to have issued an interlocutory injunction against Keating. However, on May 17, 2000, the trial court below conducted a final hearing and entered a final judgment, finding the covenant unenforceable as a matter of Georgia public policy, because: the covenant was overly broad and unreasonable in the scope of activity restrictions; the territorial restriction was overbroad and unreasonable; and the nonsolicitation provision was overbroad and unreasonable. The interlocutory injunction from federal court was never put in evidence before the trial court prior to the final judgment, although the trial judge was given a copy. *Held*:

1. Hulcher contends that the judgment should be vacated because of the interlocutory federal injunction. We do not agree.

The federal district court in this diversity jurisdiction case and the Superior Court of Fulton County have concurrent subject matter jurisdiction as separate and independent jurisdictions so that the same cause of action can be maintained between the same parties over the same issues at the same time. See *Inter-Southern Life Ins. Co. v. McQuarie*, 148 Ga. 233, 235 (1) (96 SE 424) (1918); *Huff v. Valentine*, 217 Ga. App. 310, 311 (1) (457 SE2d 249) (1995). Only a final adjudication on the merits precludes the other, separate jurisdiction from making a determination on the merits. When a final determination on the merits has resulted, then under the doctrines of res judicata and collateral estoppel, the other court becomes bound by the finality of judgment. *Barkley-Cupit Enterprises v. Equitable Life Assurance &c.*, 157 Ga. App. 138, 140 (1) (276 SE2d 650) (1981).

Further, the trial court in this case has entered final judgment

on the issues between the parties, while the Texas federal district court has only issued an interlocutory injunction, which is "merely pendente lite relief" and which is a long procedural journey from a final judgment and affirmance by the United States Court of Appeals for the Fifth Circuit in that jurisdiction. See *GTE Sylvania, Inc. v. Consumers Union &c.*, 445 U. S. 375, 379-380 (100 SC 1194, 63 LE2d 467) (1980). "Hearings on these nonpermanent injunctions do not serve the same purpose as a hearing on the merits; they only preserve the status quo awaiting resolution of the merits." *Texas v. Wellington Resources Corp.*, 706 F2d 533, 537 (5th Cir. 1983); see also *Meineke Discount Muffler v. Jaynes*, 999 F2d 120, 122, n. 3 (5th Cir. 1993).

A case of actual controversy still exists, because the federal district court has rendered no final judgment as an adjudication on the merits that delineates the rights of the parties, but only its interlocutory order that places the plaintiffs under a real and present threat of contempt. Such Texas action clearly demonstrates that Hulcher treats these issues as a real controversy and would not hesitate to seek the sanction of contempt. See OCGA § 9-4-2 (a); *Calvary Independent Baptist Church v. City of Rome*, 208 Ga. 312, 314 (3) (66 SE2d 726) (1951). In the race to the courthouse, victory does not go to the swiftest litigant with the first injunction, but to the litigant with the first final judgment, making a final disposition on the merits. See *Barkley-Cupit Enterprises v. Equitable Life Assurance &c.*, supra at 140. This affirmance of the trial court's declaratory judgment will "relieve the petitioner from uncertainty and insecurity." *Calvary Independent Baptist Church v. City of Rome*, supra at 314. The trial court's judgment and this Court's opinion are not advisory or hypothetical in nature, but void a covenant that flagrantly violates the public policy of this State and that seeks to prohibit Keating from working for Corman in this State in competition with Hulcher. See *Cheeks v. Miller*, 262 Ga. 687, 689 (425 SE2d 278) (1993); *Cook v. Sikes*, 210 Ga. 722, 727-728 (82 SE2d 641) (1954).

2. Plaintiff contends that the trial court erred in applying Georgia law rather than Texas law as specified in the contract. We do not agree.

The contract was executed in Texas. However, it was not to be performed in Texas, but in Georgia: it did not involve a covenant not to compete in Texas, but in other states, including Georgia; Keating never worked in Texas, but worked in Georgia; he was not personally subject to the jurisdiction of a Texas court, but was a resident in Georgia at the time the litigation commenced and the last time he worked for Hulcher; and the contract was to be enforced in Georgia. Texas has no nexus with Keating and has no significant interest or contacts with Keating. The only relationship with Texas is that

Hulcher is a Delaware corporation that works all over North America, including Georgia, and has its main office in Texas. See *Gen. Elec. Credit Corp. v. Home Indem. Co.*, 168 Ga. App. 344, 350-351 (2) (309 SE2d 152) (1983).

Generally, Georgia will follow a forum selection clause in an employment contract. See *Iero v. Mohawk Finishing Products*, 243 Ga. App. 670 (534 SE2d 136) (2000). However, this contract involves not a forum selection clause, but a choice of law selection clause and requires a different legal analysis.

Georgia conflicts of law will not follow a contractual selection of law of a foreign state where such chosen law would contravene the public policy of Georgia against certain unlawful covenants not to compete. See *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676 (2) (238 SE2d 368) (1977); see also *Wolff v. Protege Systems*, 234 Ga. App. 251, 256 (3) (506 SE2d 429) (1998); *Scherer v. Scherer*, 249 Ga. 635, 638 (1) (292 SE2d 662) (1982). On the very issue of Texas covenants against competition and contract selection of choice of Texas law, this Court has held that Texas law will not be followed because it flagrantly contravenes the public policy of Georgia in this regard. See *Enron Capital &c. Corp. v. Pokalsky*, 227 Ga. App. 727, 730 (3) (490 SE2d 136) (1997).

This case is distinguishable from *Iero v. Mohawk Finishing Products*, supra at 671, because first, that case was a forum selection clause; and, second, in that case the plaintiff failed to carry the burden of showing how the application of New York law would be contrary to the public policy of Georgia and that "enforcement of his employment contract would be unreasonable under the circumstances." Id. at 671; see also *Carnival Cruise Lines v. Shute*, 499 U. S. 585, 592 (111 SC 1522, 113 LE2d 622) (1991). In this case, however, Keating showed that Hulcher's restrictive covenant as to competition was a flagrant violation of Georgia public policy. Further, this Court had previously declined to follow Texas law on such issue, because Texas law flagrantly violated Georgia public policy. See *Enron Capital &c. Corp. v. Pokalsky*, supra at 730; see also *Bremen v. Zapata Off-Shore Co.*, 407 U. S. 1, 15 (92 SC 1907, 32 LE2d 513) (1972); *Iero v. Mohawk Finishing Products*, supra at 671.

3. Plaintiff contends that the trial court erred in evaluating the restrictive covenant solely on its face and without considering the nature of the industry and Keating's high level managerial position when it determined whether the covenant was reasonably limited to protect Hulcher's legitimate business interests. We do not agree.

The affidavit of Keating and the affidavit of Frank Given, vice president of Hulcher, clearly state the nature of Hulcher's business, Keating's employment history with it, Keating's personal relationship with clients, and the level of knowledge that he had acquired.

The trial court's judgment of May 22, 2000, neither explicitly nor implicitly indicates that the trial court did not consider all of the evidence in the record. Therefore, this Court must presume "that the [trial court] performed [its] duty by considering the evidence and making a finding from it, where the issue is one for such determination." *Sessions v. Oliver*, 204 Ga. 425, 431 (1) (50 SE2d 54) (1948); see also OCGA § 24-4-24 (b) (2); *Riggins v. State*, 159 Ga. App. 791 (285 SE2d 579) (1981). Moreover, its statement on April 21, 2000, that "[t]his is a legal issue. I don't need testimony under any case, whether it is enforceable or not enforceable," does not establish that the trial court failed and refused to consider the evidence in the record at the time of final hearing prior to ruling on May 17, 2000. Further, whether or not a covenant not to compete is reasonable is a question of law for determination by the trial court. *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992); *Beckman v. Cox Broadcasting Corp.*, 250 Ga. 127, 130 (296 SE2d 566) (1982); *McAlpin v. Coweta Fayette Surgical Assoc.*, 217 Ga. App. 669, 671 (458 SE2d 499) (1995).

4. Hulcher contends that the trial court erred in finding that the covenant was overbroad and unreasonable as to its territorial restrictions. We do not agree.

The territorial limitations were Florida, Georgia, Illinois, Ohio, and Tennessee. Given testified that such restricted territory covered where Keating had worked in the past and developed relationships; where Keating had close relationships with railroad personnel who could give him business; and where the principal eastern railroads, CSX and Norfolk Southern, have their main concentration of trackage. Given never testified that either CSX or Norfolk Southern was Hulcher's exclusive client or that Corman did not also do work for these railroads in these states in the past. Thus, neither the clients nor the territory in the covenant was exclusively Hulcher's. By Hulcher's strategically selecting these states, no east-west or north-south mainline railroad east of the Mississippi could operate without passing through this territory, and there was no need to specifically include each contiguous state, except to exclude rail yards and sidings.

> While a contract in general restraint of trade or which tends to lessen competition is against public policy and is void (1983 Ga. Const.; Art. III, Sec. VI, Par. V (c); OCGA § 13-8-2), a restrictive covenant contained in an employment contract is considered to be in partial restraint of trade and will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor

it is imposed, and does not unduly prejudice the interests of the public.

(Citation and punctuation omitted.) *W. R. Grace & Co. v. Mouyal*, supra at 465. "A covenant not to compete, being in partial restraint of trade, is not favored in the law, and will be upheld only when strictly limited in time, territorial effect, the capacity in which the employee is prohibited from competing and when it is otherwise reasonable." (Citations and punctuation omitted.) *Beckman v. Cox Broadcasting Corp.*, supra at 129. To determine the reasonableness of a restrictive covenant, courts examine the covenant's terms regarding time, territory, and scope of activity. *American Gen. Life &c. Ins. Co. v. Fisher*, 208 Ga. App. 282, 283 (1) (430 SE2d 166) (1993).

In this case, the area restricted as to competition exceeds the area within which Keating worked for Hulcher. While this Court will accept as prima facie valid a territory where the employee worked and the employer does business, a territory that is only where the employer does business but the employee did not work is overly broad on its face, absent strong justification for such protection, other than the desire not to compete with the former employee. *Rollins Protective Svcs. Co. v. Palermo*, 249 Ga. 138, 140 (1) (287 SE2d 546) (1982); *Ceramic &c. Coatings Corp. v. Hizer*, 242 Ga. App. 391 (529 SE2d 160) (2000). The record fails to show facts that justify such extensive territorial restriction. Further, entire states are included, although Keating worked for Hulcher only in a limited area of such states where the railroads were located. *Rollins Protective Svcs. Co. v. Palermo*, supra at 140; *Ceramic &c. Coatings Corp. v. Hizer*, supra at 393. There must be a balancing between the employee's right to earn a living and ability to determine with certainty the geographic area boundaries in which post-employment activities are restricted. These considerations must be balanced against the employer's interest in customer relationships that its former employee established for the employer and its right to protect itself from the risk that the former employee might use such relationships to unfairly appropriate the employer's existing customers.

However, a restriction against doing business with any actual or potential customers of the employer located in a specific geographic area in which the employee had not actually done business is overbroad and unreasonable. *W. R. Grace & Co. v. Mouyal*, supra at 465; see also *Chaichimansour v. Pets Are People Too*, 226 Ga. App. 69, 70-71 (1) (485 SE2d 248) (1997). Therefore, the covenant is unreasonably broad because it covers a state and areas of states where the plaintiff never worked. See *Brunswick Floors v. Guest*, 234 Ga. App. 298, 300-301 (506 SE2d 670) (1998).

As to the restrictions on solicitation of Hulcher's clients or

employment of its employees, there is no restriction as to territory so that the restriction applies to all of North America, which is unreasonable because Keating had no contact with customers or employees outside his work area sufficient to establish a relationship with them. See *W. R. Grace & Co. v. Mouyal*, supra at 465; *Sanford v. RDA Consultants*, 244 Ga. App. 308 (535 SE2d 321) (2000); *Club Properties v. Atlanta Offices-Perimeter*, 180 Ga. App. 352, 355 (3) (348 SE2d 919) (1986).

5. Hulcher contends that the trial court erred in finding that the restrictions were overly broad and unreasonable as to the scope of activity. We do not agree.

The Georgia courts have found that a former employer does not need a restrictive covenant that prohibits work for a competitor in any capacity in order to protect its legitimate interests, because a reasonable restriction sets forth with specific particularity those activities related to the employer's business in which the employee was trained by the employer or worked for the employer, thereby protecting the employer's interests from competition in that regard only. *Howard Schultz &c., Inc. v. Broniec*, 239 Ga. 181, 184-185 (2) (236 SE2d 265) (1977); *Harville v. Gunter*, 230 Ga. App. 198, 200 (2) (495 SE2d 862) (1998) (speech pathology and officer, stockholder, director, or employee with any speech pathology provider too broad); cf. *Saxton v. Coastal Dialysis &c. Clinic*, 220 Ga. App. 805, 807-809 (470 SE2d 252) (1996) (as nephrologist or as owner, manager, or employee operating in medical or managerial capacity was specifically limiting); and see *Augusta Eye Center v. Duplessie*, 234 Ga. App. 226, 227 (506 SE2d 242) (1998) (covenant restricted to certain delineated capacities as an ophthalmologist only). Where a noncompete covenant, for someone other than a licensed professional, is so broad that such former employee is prohibited from working for a competitor of the former employer in any capacity, such covenant is unreasonable. See *Firearms Training Systems v. Sharp*, 213 Ga. App. 566, 567 (445 SE2d 538) (1994); *Fleury v. AFAB, Inc.*, 205 Ga. App. 642, 643 (423 SE2d 49) (1992). Such restriction imposes "a greater limitation on the employee than is necessary because [the former employee] is prohibited from being an officer or director or owning stock in other companies, activities which are very different from [his] work." (Citation and punctuation omitted.) *Brunswick Floors v. Guest*, supra at 301.

In this case, Keating is prohibited from working for a competitor in any capacity, either directly or indirectly, and from owning, managing, operating, controlling, being employed or connected with in any capacity any business similar to railroad derailment services and emergency response hazardous material remediation businesses conducted by Hulcher. *Sanford v. RDA Consultants*, supra; *Ceramic &c. Coatings Corp. v. Hizer*, supra. Thus, he is prohibited from employ-

ment in any capacity for a competitor or management and ownership in a competitor. Under Georgia law, this violates Georgia public policy because it is anti-competitive, and the restriction is broader than necessary to protect Hulcher. See *Puritan-Churchill Chem. Co. v. Eubank*, 245 Ga. 334, 335 (265 SE2d 16) (1980); *Browning v. Orr*, 242 Ga. 380, 381 (249 SE2d 65) (1978).

6. Hulcher contends that the trial court erred in ruling that the nonsolicitation provision was overly broad and unreasonable. We do not agree.

The nonsolicitation of Hulcher's customers is not limited to those with whom Keating had a relationship and Hulcher had as actual customers as opposed to potential customers, but also extends to any customer in North America. Such provision in territory and scope is overly broad and unreasonable, rendering it unenforceable. Such nonsolicitation covenant must be limited to those customers within the specific territory where plaintiff actually worked for a reasonable business need for protection to arise; however, in this case, the need is absent where the actual customers are scattered across North America and Keating had no relationship with most of them. *W. R. Grace & Co. v. Mouyal*, supra at 466-467.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED DECEMBER 8, 2000 —
RECONSIDERATION DENIED JANUARY 8, 2001 — 

*Troutman Sanders, Alan E. Lubel, Mary F. Mackin, Andrew M. Greene*, for appellant.

*Seyfarth, Shaw, Fairweather & Geraldson, Frederick T. Smith, Donna L. Keeton*, for appellees.