A01A2321. NEW ATLANTA EAR, NOSE & THROAT ASSOCIATES, P.C. v. PRATT et al.
(560 SE2d 268)

MILLER, Judge.

This case involves the enforceability of restrictive covenants found in employment and shareholder agreements of five physicians who left a medical group and announced they intended to violate the covenants. The trial court deemed all of the covenants unenforceable. We hold that with the exception of one physician (Dr. Pratt), the employment restrictive covenants allow the medical group to shift and expand the proscribed territory during the term of the agreements and are therefore unenforceable. We also hold that the shareholder restrictive covenant, which contains no territorial restriction, cannot be blue-penciled and is therefore unenforceable. Accordingly, we affirm the trial court's judgment declaring all of the covenants unenforceable, with the exception of Dr. Pratt's employment restrictive covenant, which is enforceable.

Atlanta Ear, Nose & Throat, P.C. (the "former medical group") operated a medical clinic at which numerous physicians worked, including the five who are defendants here. In November 1996 the former medical group and its owners (who did not include defendants) agreed to sell, at a later date, the group's assets to PSC Management Corporation. Three months later in February 1997, the five defendants entered into employment agreements with New Atlanta

Ear, Nose & Throat Associates, P.C. (the "new medical group"), which had been formed to operate the assets of the former medical group once the asset sale closed. The closing took place two months later, in which the new medical group contracted with PSC to use those assets and to have PSC manage the new medical group's operations. The five defendants and other physicians received stock in PSC's parent corporation and in the new medical group and apparently entered into a shareholder agreement with the new medical group, although in the record we have only a copy of a restated shareholder agreement executed two years later in August 1999. Based on the parties' representations, we assume for purposes of this opinion that the original shareholder agreement contained the same restrictive covenant found in the restated agreement.

Four sets of restrictive covenants are found in the various agreements. The November 1996 asset acquisition agreement has a broad five-year post-closing covenant preventing the former medical group from competing, soliciting, and hiring; the February 1997 employment agreements prohibit the defendants from post-termination competition for eighteen months; the March 1997 management agreement precludes the new medical group from engaging in various competitive activities with PSC for eighteen months after termination; and the August 1999 restated shareholder agreement prevents each shareholder from practicing medicine with other new medical group physicians for three years after termination.

Four years into their employment contracts, the five defendants (Drs. Pratt, Bhansali, Golde, Burton, and Robinson) terminated their employment and announced they intended to disregard the restrictive covenants contained in the employment and restated shareholder agreements. The new medical group sued to enforce the employment and shareholder restrictive covenants but moved for an interlocutory injunction on the employment restrictive covenants only. The defendants moved to enjoin enforcement of both the employment and shareholder restrictive covenants. The court ruled that both sets of covenants were unenforceable and enjoined their enforcement. The new medical group appeals.

1. *The Employment Restrictive Covenants.* The employment restrictive covenants all provide:

> Physician agrees that during Physician's employment by Medical Group and for a period of eighteen (18) months following the effective date of any termination of the Employment Term, . . . Physician will not, directly or indirectly, alone or in conjunction with any other Person: i. open or join a medical office within an eight (8) mile radius of a "Prohibited Office" and practice medicine at that office or practice

medicine at any other medical clinic, ambulatory service center or hospital located within such eight (8) mile radius of a Prohibited Office in any of the Practice Specialties; and ii. see "Patients" for consultation or treatment within any of the Practice Specialties at any medical office located within an eight (8) mile radius of a Prohibited Office. For purposes hereof a "Prohibited Office" is one or more of the offices listed in *Part Two* of *Exhibit A*, in which Physician saw Patients for Medical Group during the eighteen (18) months preceding the effective date of termination of the Employment Term, and "Patient" means any individual to whom services were provided by Physician at a Prohibited Office during the eighteen (18) month period prior to Physician's date of termination.

Part Two of Exhibit A has the heading *"Medical Group Office Locations to Which Physician is Assigned,"* which is then followed by a list of two or three locations. For Dr. Robinson the list is "Medical Quarters/Northside, Roswell, Snellville"; for Dr. Burton "Medical Quarters/Northside, Marietta, Austell"; for Dr. Bhansali "Marietta, Medical Quarters/Northside"; and for Dr. Golde "Marietta, Austell, Medical Quarters/Northside." Although Dr. Pratt's list originally read "Medical Quarters/Northside, Marietta, Austell," in December 1998 he executed and delivered an amendment to change that list to read:

Austell – Cobb Medico, 1680 Mulkey Road, Suite E, Austell, Georgia 30106 and 1790 Mulkey Road, Suite 7, Austell, Georgia 30106

Marietta – 833 Campbell Hill Street, Marietta, Georgia 30060 and 790 Church Street, Suite 140, Marietta, Georgia 30060

Medical Quarters/Northside – 5555 Peachtree Dunwoody Road, Suite 235, Atlanta, Georgia 30342

Woodstock – 120 North Medical Parkway, Suite 102, Woodstock, Georgia 30189.

(a) *Level of Scrutiny.* In determining the enforceability of restrictive covenants, we first determine what level of scrutiny to apply. There are three levels: strict scrutiny, which applies to employment contracts; middle or lesser scrutiny, which applies to professional partnership agreements; and much less scrutiny, which applies to sale of business agreements.[1]

---

[1] *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289, 290-291 (1) (498 SE2d 346) (1998).

The answer here is quite clear, as there were restrictive covenants contained in both the employment and shareholder agreements executed by the defendants. Independent of the relative bargaining power of the parties, *Russell Daniel Irrigation Co. v. Coram*[2] held that where a party, in conjunction with the same transaction, has signed an employment and a partnership agreement with his employer, both of which contain restrictive covenants, then the restrictive covenant in the employment agreement is subject to strict scrutiny. *Coram* explained:

> Subjecting two restrictive covenants to different treatment, even though found in agreements executed as part of the same transaction, is consistent with the rationale behind the different levels of scrutiny. When one is selling a business or purchasing partnership interests, more weighty consideration is being offered in exchange for the non-compete covenant. The business seller is receiving substantial consideration for the business he has built up, the value of which would be significantly diminished to the buyer if he were allowed to compete in the same market. The potential partner will receive a share of the profits, which profits are generally protected by non-compete covenants required from the other partners. Thus, non-compete covenants found in sale of business or partnership agreements are generally afforded greater degrees of latitude. If the business seller or potential partner as a part of the transaction also enters into a separate employment agreement with its own additional non-compete covenant, then the consideration received for that covenant is usually less (generally employment benefits such as salary and insurance coverage), subjecting it to a stricter level of scrutiny. The context and consideration of the two restrictive covenants being different, they are subject to different levels of scrutiny.[3]

Here there are the following additional factors differentiating the restrictive covenants in the employment contracts from those in the shareholder agreement: (i) at the time they entered into the employment agreements, the defendants were not shareholders of the new or former medical group, as they received no stock until the closing two months later; (ii) the employment agreements all speci-

---

[2] 237 Ga. App. 758, 759 (1) (516 SE2d 804) (1999).

[3] Id.; see *Johnstone v. Tom's Amusement Co.*, 228 Ga. App. 296, 298 (2) (491 SE2d 394) (1997) (physical precedent only); *Arnall Ins. Agency v. Arnall*, 196 Ga. App. 414, 419 (2) (396 SE2d 257) (1990) (physical precedent only).

fied that their restrictive covenants "shall be deemed, and shall be construed as separate and independent agreements"; and (iii) the restrictive covenant in the shareholder agreement indicated that it was in addition to the employment restrictive covenants in that it in no way relieved the shareholders of those separate employment obligations. Accordingly, we review the employment restrictive covenants under strict scrutiny.

(b) *Shifting and Expanding Territorial Restrictions.* Inasmuch as covenants against competition in employment contracts are in partial restraint of trade, they are enforceable only "if strictly limited in time and territorial effect, and if they are otherwise reasonable considering the business interests of the employer sought to be protected and the effect on the employee."[4] This is a question of law for the court based upon the wording of the covenant.[5]

The defendants do not contend that either the 18-month time limitation or the restricted scope of activity is unreasonable. Rather, the question is whether each physician's respective territorial restriction is unreasonable. In this regard, *Koger Properties v. Adams-Cates Co.*[6] held that "a territorial restriction which cannot be determined until the date of the employee's termination is too indefinite to be enforced. . . . [The employee must be] able to forecast with certainty the territorial extent of the duty owing."[7] Thus, if the covenant's language allows territories to be added during the course of the agreement, the covenant is unenforceable.[8]

Citing *AGA, LLC v. Rubin*,[9] the defendants argue that because the list of two or three prohibited locations could be *narrowed* during the course of the agreement so as to eliminate locations where the physician had not seen patients during the last eighteen months of the agreement, the agreement's territory could not be forecast with certainty and therefore was unenforceable. This argument is without merit. Unlike *Rubin*, the list of two or three locations was the *outside* limit that circumscribed the reach of the restrictive covenant. The fact that this small list could be narrowed does not diminish the fact that no locations could be added; indeed, the narrowing aspect of the covenant only worked to the physician's advantage, as the maximum

---

[4] (Citation and punctuation omitted.) *Koger Properties v. Adams-Cates Co.*, 247 Ga. 68 (1) (274 SE2d 329) (1981); see *Advance Technology Consultants v. RoadTrac*, 250 Ga. App. 317, 320 (1) (551 SE2d 735) (2001).

[5] *Koger Properties*, supra, 247 Ga. at 69 (2).

[6] Id. at 68 (1).

[7] (Citations and punctuation omitted.) Id. at 68-69 (1); see *Advance Technology Consultants*, supra, 250 Ga. App. at 322 (4); *AGA, LLC v. Rubin*, 243 Ga. App. 772, 774-775 (533 SE2d 804) (2000).

[8] *Ceramic & Metal Coatings Corp. v. Hizer*, 242 Ga. App. 391, 393 (1) (529 SE2d 160) (2000).

[9] Supra, 243 Ga. App. at 774-775.

number of locations covered by the covenant was set and immovable.[10]

Nevertheless, as found by the trial court, the listing of the prohibited locations has a fatal flaw: the addresses and the number of offices in each location are not identified, thus allowing (during the course of the agreement) the 16-mile circles of prohibited territory within each listed location to shift as offices move and to expand in number as offices are added. Indeed, in its appellate brief, the new medical group conceded that under the wording of the employment restrictive covenants, four defendants

> were restricted from practicing medicine within an eight mile radius of *"one or more of"* [the new medical group's] Marietta offices at which they had seen "Patients" during the eighteen months prior to the termination of employment. It was obvious that the territorial limit was based on the location of *any* [new medical group] office in Marietta.

(Emphasis supplied.)

These very circumstances occurred, as the Marietta office moved twice during the course of the agreement, approximately one-half mile each time. Also, a second office was opened in Austell. The new medical group's president testified that the list of prohibited offices moved or expanded to include the additional locations to accommodate offices that moved or expanded. Accordingly, the covenants fall squarely within the holding of *Koger Properties* and its progeny invalidating territorial restrictions that change and expand during the course of the agreement.[11]

Dr. Pratt, however, cannot avail himself of this analysis, as he and the new medical group subsequently amended the exhibit setting forth his territorial restriction to specify the precise address and number of the offices that served as the centerpoint of the prohibited circles. Contrary to Dr. Pratt's argument, we do not find the description of the prohibited activities ambiguous. He is prohibited, within the restricted territory, (a) from opening or joining a new office and practicing medicine there, (b) from practicing any of the specified "Practice Specialties" at any other medical clinic, ambulatory service center, or hospital, and (c) from seeing "Patients" at a medical office. Therefore, as to Dr. Pratt, the trial court erred in holding that his employment restrictive covenant was unenforceable.[12]

---

[10] Cf. *Sysco Food Svcs. &c. v. Chupp*, 225 Ga. App. 584, 586-587 (1) (484 SE2d 323) (1997) (list of 11 prohibited counties was set by agreement).

[11] See, e.g., *Hizer*, supra, 242 Ga. App. at 393 (1).

[12] See *McAlpin v. Coweta Fayette Surgical Assoc.*, 217 Ga. App. 669, 672-674 (2) (458 SE2d 499) (1995).

2. *The Shareholder Restrictive Covenant.* The restated share-holder restrictive covenant prohibits each shareholder, for a period of 36 months after terminating employment with the new medical group, from practicing medicine with any other physician who was employed by the new medical group prior to the date of the share-holder's termination. No territory is specified.

Regardless of the level of scrutiny we apply, the lack of a territorial restriction renders this covenant unenforceable. Even under the liberal sale of business standard, a reasonable territorial limitation must be specified.[13] Blue penciling cannot cure the problem, for "[t]he 'blue pencil' marks, but it does not write. It may limit an area, thus making it reasonable, but it may not rewrite a contract void for vagueness, making it definite by designating a new, clearly demarcated area."[14] Certainly if the blue pencil cannot rewrite a vague territorial limitation, where the parties at least tried to describe a territory, it cannot insert an absent territorial limitation, where the parties consciously chose not to include one. Case law references to territorial blue penciling specify that the parties *designated* an over-broad geography, not that they *omitted* a geographical restriction altogether.[15] As blue penciling cannot cure this omission, the share-holder restrictive covenant is unenforceable. Moreover, the employment agreement executed in February 1997 cannot be construed together with the restated shareholder agreement executed two and one-half years later in August 1999 (which became effective in July 1999 and expressly superseded the March 1997 shareholder agreement) so as to supply the missing element, as the agreements are not contemporaneous.[16]

Accordingly, with the exception of Dr. Pratt's employment restrictive covenant, the restrictive covenants found in the employment and restated shareholder agreements are unenforceable.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Eldridge, J., concur.*

---

[13] See *Hudgins v. Amerimax Fabricated Products*, 250 Ga. App. 283, 287 (2) (551 SE2d 393) (2001).

[14] *Hamrick v. Kelley*, 260 Ga. 307, 308 (392 SE2d 518) (1990).

[15] See, e.g., *Jenkins v. Jenkins Irrigation*, 244 Ga. 95, 100-101 (3) (259 SE2d 47) (1979); *Hudgins*, supra, 250 Ga. App. at 287-288 (2); cf. *Drumheller v. Drumheller Bag & Supply*, 204 Ga. App. 623, 628 (3) (420 SE2d 331) (1992) (trial court may "blue pencil" the covenants so as to include only those activities *enumerated* in the agreement that are necessary for the protection of legitimate business interests).

[16] *Lyle v. Memar*, 259 Ga. 209, 210 (378 SE2d 465) (1989).

DECIDED JANUARY 25, 2002 —
RECONSIDERATION DENIED FEBRUARY 13, 2002.

*Rogers & Hardin, Robert B. Remar, Ashley R. Hurst, Moore, Ingram, Johnson & Steele, G. Phillip Beggs,* for appellant.

*Kitchens, Kelley & Gaynes, Mark A. Kelley, Stephen V. Kern,* for appellees.