[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 19, 2002
THOMAS K. KAHN
CLERK

_____

No. 02-11324

_____

D. C. Docket No. 01-00182-CV-4

JAMES A. KEENER,

Plaintiff-Counter-
Defendant-Appellee,

versus

CONVERGYS CORPORATION,

Defendant-Counter-
Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(November 19, 2002)

Before BIRCH and BLACK, Circuit Judges, and PROPST[*], District Judge.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA,

---

[*] Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama, sitting by designation.

PURSUANT TO O.C.G.A. § 15-2-9. TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

Convergys Corporation appeals a declaratory judgment granted to James A. Keener and a permanent injunction imposed against Convergys. The district court declared a non-competition agreement ("NCA") between Convergys and Keener unenforceable under Georgia law, enjoined Convergys from seeking to enforce the NCA against Keener, and dismissed Convergys' counterclaims. To reach the merits of Convergys' appeal regarding the enforceability of the NCA, we must first decide whether the district court properly elected to apply Georgia law to the agreement, instead of Ohio law, as contracted to by the parties to the NCA. Because this issue involves a dispute within Georgia conflicts of law jurisprudence, we certify this question to the Supreme Court of Georgia and postpone any further determination of the appeal in this case until we receive an answer from them. Question CERTIFIED.

## I. BACKGROUND

James A. Keener is a former employee of Convergys Corporation ("Convergys"), an Ohio corporation. In 1984, Keener began working for Cincinnati Bell Information Systems ("CBIS"), located in Cincinnati, Ohio, and remained employed with CBIS through its ultimate evolution into what is now

2

Convergys until he voluntarily terminated his employment in March 2001. During the course of his employment with CBIS/Convergys, Keener worked in Cincinnati, Ohio, and Chicago, Illinois.

In 1995, Keener executed the NCA with CBIS as a condition of his continued employment, which contemplated Keener's increasing exposure and responsibilities with regard to the development and marketing of CBIS's proprietary software billing systems, which are utilized by telecommunications companies, particularly providers of wireless telephone services. The NCA was supported by consideration in the form of stock options. The NCA provided, in relevant part:

> Employee agrees for two years following termination of employment for any reason (or if this period is unenforceable by law, then for such period as shall be enforceable), not to engage in any business offering services related to the business of the Company at the time of termination in any capacity which requires or utilizes the skill, training or knowledge acquired by Employee while employed by the Company, whether such capacity be as a principal, partner, joint venturer, agent, employee, salesperson, consultant, director or officer, where such position would involve Employee in any business activity in competition with the Company or in any business that provides billing and/or customer care systems to third parties engaged in the communication business (including wireless, wireline and cable communication businesses). This restriction will be limited to the geographical area where the Company is doing business at the termination of employment or to such other geographical area as a court shall find reasonably necessary to protect the goodwill and business of the Company. R1-29, Ex. A.

3

The NCA contained a "choice of law" provision, which selected Ohio as the law governing the NCA.  Id.

In 2001, Keener accepted a position in Savannah, Georgia, with H.O. Systems, a competitor of Convergys.  Upon leaving Convergys, however, Keener informed his co-workers that he was going to work in the banking industry and led them to believe that he was leaving the telecommunications and computer software industries.  Keener admitted that he was concerned about the effect of the Convergys NCA on his employment prospects and negotiated with H.O. Systems for their assistance in the event the NCA became an issue.

On 24 May 2001, Keener by happenstance encountered a Convergys salesperson while making a business call for H.O. Systems.  Later that day, Keener received a message from an attorney in Convergys' legal department, reminding him of the NCA.  Keener and H.O. Systems later received a letter from Convergys reiterating the existence of the NCA and demanding that Keener discontinue his employment with H.O. Systems.  Ultimately, after consultation with H.O. Systems' legal counsel, Keener and H.O. Systems entered into a separation agreement, whereby Keener received $50,000 severance and other enumerated benefits.

On 3 August 2001, Keener brought an action for declaratory and injunctive relief in the United States District Court for the Southern District of Georgia.

Keener sought a declaratory judgment that the NCA was unenforceable and an injunction to restrain Convergys from enforcing the NCA. Keener also claimed damages for tortious interference with his employment with H.O. Systems by Convergys and asserted entitlement to costs and attorney's fees resulting from Convergys' "stubborn[] litigious[ness]" in enforcing the NCA. R1-1-9. Convergys counterclaimed for restitution and injunctive relief based upon the right to enforce the NCA. Keener moved for summary judgment and the district court ruled in his favor, declaring the NCA unenforceable under Georgia law, enjoining Convergys from enforcing it, and dismissing Convergys' counterclaims. It is from this ruling that Convergys appeals.

## II. DISCUSSION

We first review a district court's order granting summary judgment de novo and then review for abuse of discretion a district court's order granting injunctive relief based upon a proper grant of summary judgment. Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1306 (11th Cir. 2001), petition for cert. filed, 70 U.S.L.W. 3395 (U.S. Nov. 6, 2001) (No. 01-801); see also Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr., 97 F.3d 492, 496 (11th Cir. 1996).

Keener's claims were grounded in diversity jurisdiction, therefore the

district court, sitting in Georgia and acting in accordance with <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 58 S. Ct. 817 (1938), applied Georgia's conflict of law rules to determine whether Georgia or Ohio law applied to the NCA.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941).  In accordance with <u>Erie</u>, we review the district court's decision in light of Georgia conflict of laws rules and our precedent in applying those rules.

Convergys contends that the district court acted contrary to precedent by declaring the NCA unenforceable under Georgia law.  Convergys argues that the district court should have given effect to the choice-of-law provision in the NCA and decided the merits of Keener's motion for summary judgment under Ohio law.  In support, Convergys points to the factual record that contains little connection between the execution of the NCA and Georgia.  The only connection argued is that Keener currently lives in Georgia and was employed by H.O. Systems in Georgia.  Accordingly, Convergys claims, pursuant to the language in Restatement (Second) Conflict of Laws § 187(2)[1], Georgia does not have the requisite

---

[1]  Restatement (Second) of Conflict of Laws § 187(2) (1971) provides:
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

6

"materially greater interest" than Ohio in applying its own law to the NCA, and the district court erred when it did not consider the relative interest of the two states before applying Georgia law to declare the NCA unenforceable.  Convergys argues that Ohio law governs and the NCA is enforceable under Ohio law.

Before we can decide the merits of Convergys' appeal regarding the enforceability of the NCA, we must first determine whether the district court correctly elected to apply the law of Georgia.  The district court relied upon, <u>inter alia</u>, <u>Nasco, Inc. v. Gimbert</u>, 238 S.E.2d 368 (Ga. 1977), and <u>Hulcher Services, Inc. v. R.J. Corman Railroad Company, L.L.C.</u>, 543 S.E.2d 461, 465 (Ga. Ct. App. 2000), for the Georgia conflict of laws rule that "[t]he law of the jurisdiction chosen by parties to a contract to govern their contractual rights will not be applied by Georgia courts where application of the chosen law would contravene the policy of, or would be prejudicial to the interests of, this state."  <u>Nasco</u>, 238 S.E.2d at 369 (citing, <u>inter alia</u>, Restatement (Second) Conflict of Laws § 187(2)(b)).  The district court assessed whether the NCA was contrary to Georgia public policy and, finding that it was, refused to apply Ohio law.

---

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 [(Law Governing in Absence of Effective Choice by the Parties)], would be the state of the applicable law in the absence of an effective choice of law by the parties.

7

There are two cases in this circuit that appear to conflict with the district court's method of analysis, a fact the district court acknowledged and opted to disregard in favor of what it perceived to be actual controlling Georgia precedent. In Nordson Corp. v. Plasschaert, 674 F.2d 1371(11th Cir. 1982), we followed Nasco and, noting Nasco's citation of the Restatement section, looked toward Restatement (Second) Conflict of Laws § 187(2) to determine whether Georgia would honor the parties' choice of law provision. We understood Nasco and § 187(2) to require that "Georgia will honor the choice of law provision unless there was no reasonable basis for the parties' choice or unless the provision is 'contrary to a fundamental policy of a state which has a materially greater interest than the chosen state.'" Id. at 1375. Finding a reasonable basis for the election of Ohio law and that the provision at issue violated Georgia's policy against restraints of competition, we decided, specific to the facts in Nordson, that "the controlling determination is whether Georgia has a materially greater interest than Ohio in this issue," and found that Georgia did not. Id. ("Each case must be analyzed on its own facts."). We limited the scope of the analysis to instances when the parties had agreed on a choice of law provision. Id. Likewise, in Bryan v. Hall Chemical Company, 993 F.2d 831 (11th Cir. 1993), we followed Nordson and Nasco and sustained a district court's application of another state's law when the parties

8

contractually provided for the application of that law, based upon the fact that Georgia did not have a "materially greater interest" in applying its own law.

The district court in this case, instead, followed the reasoning of Marketing and Research Counselors, Inc. v. Booth, 601 F. Supp. 615 (N.D. Ga. 1985), which found irreconcilable the Nordson and Nasco decisions. See id. at 617 (finding the "interest analysis" language in Nordson counter to the language in Nasco that determined the validity of non-compete agreements by the public policy of Georgia). Noting that conflict, the district court relied on Booth to support its initial evaluation of the NCA pursuant to Georgia public policy without first determining whether Georgia had a "materially greater interest" than Ohio in enforcing its law.

We now seek the guidance of the Supreme Court of Georgia to settle this dispute and find it proper to certify the issue for their resolution. The language of the Restatement § 187(2), as relied upon by Nasco, suggests that an initial assessment of whether Georgia has a materially greater interest in applying its own law is a necessary step in the choice of law analysis, a step in addition to the public policy determination.

"Where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary

_Erie_ 'guesses' and to offer the state court the opportunity to interpret or change existing law." _Mosher v. Speedstar Div. of AMCA Intern., Inc._, 52 F.3d 913, 916-17 (11th Cir. 1995) (citation omitted). To the extent, if any, our prior decisions depart from Georgia conflict of laws jurisprudence, it behooves us to seek guidance as to the proper analytical framework. We find, after thorough review of Georgia law, that we are best equipped to render a decision on this issue after certification to the Georgia Supreme Court of the following question:

WHETHER A COURT APPLYING GEORGIA CONFLICT OF LAWS RULES FOLLOWS THE LANGUAGE OF RESTATEMENT (SECOND) CONFLICT OF LAWS § 187(2) AND, THEREFORE, FIRST MUST ASCERTAIN WHETHER GEORGIA HAS A "MATERIALLY GREATER INTEREST" IN APPLYING GEORGIA LAW, RATHER THAN THE CONTRACTUALLY SELECTED FORUM'S LAW, BEFORE IT ELECTS TO APPLY GEORGIA LAW TO INVALIDATE A NON-COMPETE AGREEMENT AS CONTRARY TO GEORGIA PUBLIC POLICY.

### III. CERTIFICATION

We certify the above-styled question to the Georgia Supreme Court. The phrasing used in this certified question should not restrict the Supreme Court's consideration of the problem posed by this case. This extends to the Supreme

Court's restatement of the issues and the manner in which the answer is given. To assist the Supreme Court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Georgia.

**QUESTION CERTIFIED**.