A05A0613. ALBANY BONE & JOINT CLINIC, P.C. v. HAJEK.
(612 SE2d 509)

ELLINGTON, Judge.

Albany Bone & Joint Clinic, P.C. ("the Clinic") appeals from an order of the Superior Court of Dougherty County granting partial summary judgment in this declaratory judgment action to Phillip D. Hajek, M.D. The Clinic argues the superior court erred in construing a shareholder stock valuation provision of the Clinic's corporate bylaws as a restrictive covenant in restraint of trade. We agree and reverse.

Summary judgment is proper when no genuine issue of material fact remains for jury resolution and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant of summary judgment de novo and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). So viewed, the record reveals the following relevant evidence.

The Clinic, a professional corporation comprised of medical doctors, was incorporated by the Secretary of State of Georgia in May 1999. At the time of incorporation, the shareholders included Hajek and two other doctors. In April 2003, Hajek left the Clinic's employ. Upon his departure, he sought compensation for the value of his

---

[16] See *Simpson*, supra at 682-683; *Mountain Aire*, supra at 369.

shares in the corporation. A dispute arose concerning the proper method for valuing those shares, and Hajek filed the instant declaratory judgment action.

The Clinic contended that pursuant to Article III, Section 3 of its corporate bylaws, Hajek's compensation for his ownership interest in the corporation should be limited to the book value of his shares. Hajek, on the other hand, argued his compensation should not be governed by the bylaws[1] because the provisions regarding the purchase of a departing shareholder's stock was void as an impermissibly broad restrictive covenant in restraint of trade. Hajek argued he should be treated as a dissenting shareholder entitled to the fair value of his stock in the corporation pursuant to OCGA §§ 14-2-1327 and 14-7-5. The superior court agreed and granted partial summary judgment to Hajek. The Clinic appeals, challenging the court's characterization of the valuation provisions of the bylaws as a restrictive covenant in restraint of trade.

Article III of the Clinic's corporate bylaws governs stockholders and their shares in the company. Section 3 of that article pertains to the loss of a shareholder's right to practice medicine in the corporation due to a variety of events, the effect of those events on the shareholder's rights in his shares, and the purchase or redemption of those shares by the corporation. In relevant part, Section 3 provides:

> If any shareholder of the corporation for any reason ceases to be duly licensed to practice medicine in the State of Georgia, or upon the death or adjudication of incompetence of a shareholder, or upon the severance of a shareholder as an officer, agent, or employee of the corporation, without first obtaining the written consent of all other shareholders shall become a shareholder or an officer, director, agent, or employee of another professional service corporation authorized to practice medicine in Georgia, . . . the shares of such shareholder in this corporation shall then and thereafter have no voting rights of any kind, shall not be entitled to any dividend or rights to purchase shares of any kind which might be declared thereafter by the corporation, and shall be forthwith transferred, sold and purchased or redeemed at such price or value and only in the manner following:

---

[1] For purposes of the summary judgment motion, Hajek asked the trial court to assume the bylaws were valid. Consequently, any issue with respect to the validity or applicability of the bylaws is not before us.

(a) (1) Except upon the death, permanent disability or termination of employment by normal retirement, the purchase or redemption price for such shares shall be the book value of such shares as of the end of the calendar month preceding the occurrence of such event. The term "book value" shall mean the proportionate value at which such shares are carried and shown on the books and records of the corporation[.] . . . [N]o amounts of values shall be included in such "book value" for good will or firm name, or leases or other intangible assets, or for work in process, or for fees billed but uncollected.

(2) Upon death, permanent disability, or termination of employment by normal retirement, the purchase or redemption price of such shares shall be agreed upon between the stockholder and the corporation or other stockholders as the case may be. In the event the parties are unable to agree as to the sale price of the stock, then the value shall be as determined by arbitration as soon as possible. . . . The value of all stock of the corporation shall include [certain insurance proceeds and accounts receivable].

The trial court found that paying Hajek the book value for his shares upon his departure from the Clinic (instead of the potentially higher value available when a shareholder dies, becomes disabled, or retires) constituted a "penalty" imposed on shareholders who leave the Clinic to work for a competing professional corporation. Such a penalty, the court concluded, restricts a shareholder's business activity " 'in partial restraint of trade' and must be deemed a restrictive covenant." We disagree.

In Georgia, there are four basic types of restrictive covenants: noncompetition,[2] nonsolicitation of customers,[3] nonrecruitment of employees,[4] and nondisclosure of confidential information.[5] "A characteristic shared by each of these provisions is a prohibition, or at the

---

[2] Generally, a noncompetition covenant restricts a former employee from competing with the former employer in a specified area for a specified time. See, e.g., *Firearms Training Systems v. Sharp*, 213 Ga. App. 566 (445 SE2d 538) (1994).

[3] Nonsolicitation covenants typically prohibit the solicitation of the former employer's customers. See, e.g., *DeGiorgio v. Megabyte Intl.*, 266 Ga. 539, 540 (3) (468 SE2d 367) (1996).

[4] Nonrecruitment covenants restrict a former employee's ability to recruit the former employer's employees. See, e.g., *ALW Marketing Corp. v. McKinney*, 205 Ga. App. 184, 188 (2) (421 SE2d 565) (1992).

[5] Nondisclosure covenants limit a former employee's ability to use or to disclose confidential information that does not rise to the level of trade secrets, for example, information about the former employer's operations, customers, and suppliers. See, e.g., *Lee v. Environmental Pest & Termite Control*, 271 Ga. 371, 374 (2) (516 SE2d 76) (1999).

very least a limitation, placed by one party on the other party's *future business activities.*" (Emphasis supplied.) *Swartz Investments v. Vion Pharmaceuticals*, 252 Ga. App. 365, 367 (1) (556 SE2d 460) (2001). Generally such restrictive covenants are found in contracts between an employer and an employee and exist to protect the employer's interest in property, confidential information, customer goodwill, business relationships, and other economic advantages the employer has earned for the business over the years. See generally *Durham v. Stand-by Labor of Ga.*, 230 Ga. 558 (198 SE2d 145) (1973). Such restrictive, noncompetition covenants may also exist within or ancillary to other types of contracts, such as those for the sale of a business or those governing business partnerships or corporations.[6] These covenants are "considered to be in partial restraint of trade and will be upheld if the restraint imposed is reasonable, is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public." (Citations and punctuation omitted.) *Swartz Investments v. Vion Pharmaceuticals*, 252 Ga. App. at 367 (1).

The bylaws provision at issue in this case is not part of an employment contract. It is part of corporate bylaws governing stockholders and shares in a professional corporation, a corporation in which Hajek was an equal shareholder, founding member, and corporate officer. This provision governs in greater detail what Georgia law already requires, that shares in a professional corporation may only be held by "a person who is licensed to practice the profession for which the corporation is organized and who, unless disabled, is actively engaged in such practice *as an active practicing member of the issuing corporation.*" (Emphasis supplied.) OCGA § 14-7-5 (a). In fact, Article III, Section 1 of the Clinic's corporate bylaws specifically provides that its eligible shareholders are those who "are actively engaged in the practice of medicine in the offices of the corporation."

We see nothing in Article III, Section 3 of the bylaws that allows the Clinic to prohibit or circumscribe Hajek's business activities after leaving the Clinic's employ. Nothing in the bylaws gives the Clinic a right to sue Hajek because of any competitive business activity. The provision at issue does not purport to limit where he can practice medicine or with whom, what information he must keep confidential, or whom he may or may not recruit to work with him; nor does it

---

[6] See *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289 (1) (498 SE2d 346) (1998) (professional partnership agreement); *Watson v. Waffle House*, 253 Ga. 671, 672 (2) (324 SE2d 175) (1985) (sale of business).

purport to prevent him from soliciting his former patients. It does not restrain Hajek's legal ability to compete in any way nor does it prejudice the interests of the public in a free and competitive market. Rather, it governs how Hajek and the other shareholders are to be compensated for their shares in the event they cease active participation in the professional corporation.

Finally, the superior court's characterization of Section 3 (a) of the bylaws as a financial "penalty" on shareholders who leave the Clinic to work for a competitor is based upon flawed reasoning. Section 3 (a) pertains to shareholders who, for a wide variety of possible reasons, including death, bankruptcy, or the loss of a medical license, may no longer practice in the corporation. One of the ways a shareholder may lose the right to practice in the corporation under Section 3 (a) is by joining another professional corporation authorized to practice medicine in Georgia as an officer, director, agent, or employee. Nothing in Section 3 (a) prohibits a shareholder from joining a competitor. It simply provides that if one chooses to do so, the right to continue practicing with the Clinic may be terminated. Upon losing the right to practice with the Clinic, the shareholder is then paid what any other departing shareholder (other than those who die, become disabled, or retire) would be paid under Section 3 (a) (1) — book value. Because one who leaves to work for a competitor is not singled out for disparate treatment under the stock valuation provisions, he is not "penalized." See *Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C.*, 213 Ga. App. 891, 892-893 (2) (447 SE2d 94) (1994) ("The agreement calls for payment not of a purchase price but of a severe penalty [in the form of liquidated damages], triggered simply by the fact of competition.") (punctuation omitted). In the instant case, those who cease their practice because of death, disability or normal retirement are the exception to the general rule of book value payment and they or their estates are paid a premium under Section 3 (a) (2). Thus, the trial court erred in construing Section 3 (a) (1) of the bylaws as a noncompetition penalty or forfeiture provision which might, under circumstances which are not present here, require consideration of its reasonableness as a partial restraint of trade. See id.; see also *Almers v. South Carolina Nat. Bank*, 217 SE2d 135, 139-140 (S.C. 1975) (a forfeiture clause in a profit or pension plan which provides that upon employment with a competitor a participant is divested of rights under the plan is an invalid covenant not to compete unless it contains reasonable time and geographic limitations).

For these reasons we hold that the trial court erred in granting Hajek's motion for partial summary judgment.

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED MARCH 11, 2005 —
RECONSIDERATION DENIED MARCH 25, 2005 —

*Watson, Spence, Lowe & Chambless, Charles K. Wainright II, Dawn G. Benson,* for appellant.

*Moore, Clarke, Duvall & Rodgers, James H. Moore III, David B. Folsom, Charles E. Peeler,* for appellee.