**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 13, 2023**

# In the Court of Appeals of Georgia

A23A0162. NORTH AMERICAN SENIOR BENEFITS, LLC v. WIMMER et al.

MCFADDEN, Presiding Judge.

This case calls upon us to construe Georgia's Restrictive Covenants Act, OCGA § 13-8-50 et seq. At issue is the enforceability of a restrictive covenant that operates after the end of the parties' business relationship, that undertakes to prohibit solicitation of employees, but that lacks an explicit geographic limitation. We hold that it is not enforceable.

Under the Act, "enforcement of contracts that restrict competition during the term of a restrictive covenant, so long as such restrictions are reasonable in time, geographic area, and scope of prohibited activities, shall be permitted." OCGA § 13-8-53 (a). But "[a]ny restrictive covenant not in compliance with the provisions of

this article is unlawful and is void and unenforceable" unless it can be cured under the blue-pencil provisions. OCGA § 13-8-53 (d). Cf. OCGA § 13-8-56 (4) (setting out a different rule for restrictions that operate during the term of a business relationship). And, as detailed below, the restrictive covenant before us today cannot be so cured.

The Act sets out two exceptions to the requirement that restrictive covenants that operate after the end of the parties' business relationship must contain a geographic limitation. Those exceptions apply to restrictions on efforts to solicit a former "employer's customers," OCGA § 13-8-53 (b), and to trade secrets. OCGA § 13-8-53 (e). Subsections (b) and (e) go on to specify requirements the General Assembly deemed appropriate for those types of restrictions.

The General Assembly did not set out an exception for restriction on solicitation of a former employer's employees. So it is not within our purview to create one.

The restrictive covenant before us today prohibits Alisha and Ryan Wimmer from soliciting employees of their former employer, North American Senior Benefits, LLC ("NASB"). The Wimmers argue that it is unenforceable because it does not contain an express geographic limitation in scope.

2

The state-wide business court found the restrictive covenant to be unenforceable as to the Wimmers' conduct after the termination of their contracts. We agree. We also hold that the court did not err in declining to modify the restrictive covenant to make it enforceable. So we affirm.

We note that the state-wide business court "emphasize[d] that its ruling . . . only applie[d] to the [n]on-[s]olicitation [p]rovision's validity and enforceability 'post association' and [was] in no way to be construed as a ruling on the [n]on-[s]olicitation [p]rovision's enforceability related to [d]efendants' conduct prior to the termination of the Wimmers' . . . [c]ontracts." . That fact merits emphasis because the Act distinguishes "contracts that restrict competition after the term of employment" from those that operate during the term of employment. See OCGA § 13-8-53 (a). Likewise, our opinion today addresses the enforceability of the covenant only insofar as it applies to post-association conduct.

1. *Facts and proceedings below.*

NASB is an independent marketing organization that operates in the insurance field. The Wimmers entered contracts with NASB to serve as insurance agents. The contracts contained non-solicitation-of-employees restrictive covenants that prevented the Wimmers, during the terms of their contracts and for two years after

3

termination, from employing any employee of NASB. The Wimmers terminated their contracts in June 2021, and at some point, formed Freedom & Faith, Inc., which operates in the same industry as NASB.

NASB filed suit against the Wimmers and Freedom & Faith, asserting claims for tortious interference with contractual and business relations; breach of contract; and breach of the covenant of good faith and fair dealing. The defendants answered the complaint and asserted class action counterclaims, alleging breach of contract, fraud, and negligent misrepresentation, and seeking a declaration that the non-solicitation-of-employees restrictive covenant is invalid and unenforceable. The defendants filed a motion for declaratory relief, or in the alternative, for judgment on the pleadings.

After a hearing, the state-wide business court found that the non-solicitation-of-employees restrictive covenant was void and unenforceable as applied to the Wimmers' conduct after the termination of their relationship with NASB because the covenant contains no territorial restraint whatsoever. The court then held that modifying or "blue-penciling" the provision to repair the deficiency would materially alter the provision. So the court granted the defendants' motion for declaratory relief in part, as it related to the covenant's enforceability regarding the Wimmers' conduct

4

that occurred after the termination of their contracts. The court also permanently enjoined NASB from attempting to enforce the covenant as to post-termination conduct.

The court then granted the defendants' motion for judgment on the pleadings on NASB's claims for tortious interference with contractual and business relations, breach of contract, and breach of the covenant of good faith and fair dealing to the extent those claims were based on alleged covenant violations that occurred after the Wimmers had terminated their contracts with NASB. NASB filed this appeal.

2. *The non-solicitation-of-employees restrictive covenant is unenforceable as to the Wimmers' conduct after termination of their contracts*.

The parties agree that the restrictive covenant before us is governed by Georgia's Restrictive Covenants Act, OCGA § 13-8-50 et seq. The Act applies to "contracts and agreements between or among . . . [e]mployers and employees[.]" OCGA § 13-8-52 (a) (1). And although the parties' contracts designate the Wimmers as independent contractors, the Act defines "employee" to include independent contractors. OCGA § 13-8-51 (5) (C). See also *Belt Power v. Reed*, 354 Ga. App. 289, 293-294 (2) (a) (840 SE2d 765) (2020) (restrictive covenants prohibiting former employees from soliciting or hiring their former employer's employees "fall within

5

the scope of the Restrictive Covenants Act, and the enforceability of those covenants should be analyzed under the provision of the Act.").

Under the Act, no contract provision that "restrict[s] competition" can be enforced unless it is "reasonable in time, geographic area, and scope of prohibited activities." OCGA § 13-8-53 (a). The non-solicitation-of-employees restrictive covenant before us does not contain an expressly stated geographic area.

NASB argues that the statute should be read to require only that any geographic restrictions be reasonable under the circumstances, that the provision at issue is reasonable, and so that it should be deemed enforceable. We cannot agree.

We review de novo the state-wide business court's ruling that the non-solicitation-of-employees restrictive covenant is unenforceable as to post-termination conduct as a matter of law. See *Junior v. Graham*, 313 Ga. 420, 423 (2) (870 SE2d 378) (2022) (statutory interpretation involves questions of law and is reviewed de novo).

The restrictive covenant before us specifies its duration and the scope of prohibited activities, but it does not specify the geographic area covered. It states:

**13. Non-Solicitation of Employees and Independent Contractors**:
During the term of the Licensed Agent's contract with NASB and for a

6

period of two (2) years following termination of said contract, Licensed Agent shall not, directly or indirectly: (a) solicit for the provision [of] services or employment any employee, agent or independent contractor of NASB, (b) advise or recommend to any other person that they employ or solicit for provision of services any employee or independent contractor for NASB, (c) encourage or advise such employees, agents or independent contractors to sever, discontinue or not renew any agreement or relationship to NASB, or (d) otherwise establish or seek to establish any business relationship with any such employee, agent or independent contractor relating to the sale of insurance products.

In *CarpetCare Multiservices v. Carle*, 347 Ga. App. 497 (819 SE2d 894) (2018) (physical precedent only), we addressed the enforceability of a non-compete covenant that, like the non-solicitation-of-employees restrictive covenant before us today, was governed by OCGA § 13-8-53 (a). The non-compete covenant before us in *CarpetCare* did not contain a geographic limitation. We held that a geographic limitation is required by OCGA § 13-8-53 (a). So we concluded that the covenant was unenforceable.

Mindful of our duty "to afford the statutory text its plain and ordinary meaning," *CarpetCare*, 347 Ga. App. at 499 (citation and punctuation omitted), and noting that "this same geographic restriction was excluded from OCGA § 13-8-53 (b) pertaining to [restrictive covenants for the] non-solicitation [of business from an

7

employer's customers]," id., we reasoned that covenants governed by OCGA § 13-8-53 (a) must set out some kind of geographic limitation. Id. at 500. We held that "[b]ecause the non-compete covenant [at issue] did not contain any reference to a geographic area limitation, it failed to comply with OCGA § 13-8-53 (a), and thus . . . was void and unenforceable." Id.

The version of Court of Appeals Rule 33.2 (a) then in effect provided that, because one judge dissented, *CarpetCare* was physical precedent rather than binding precedent. But we find its reasoning persuasive and now adopt it.

Our conclusion that covenants governed by OCGA § 13-8-53 (a) must set out some kind of geographic limitation is reinforced — at least as it relates to covenants prohibiting post-termination conduct — by language elsewhere in OCGA § 13-8-53.

Subsection OCGA § 13-8-53 (c) (1) makes clear that subsection (a) does require a description of geographic areas. It states that "[w]henever a description of . . . geographic areas . . . *is required* by this Code section, any description that provides fair notice of the maximum reasonable scope of the restraint shall satisfy such requirement, even if the description is generalized or could possibly be stated more narrowly to exclude extraneous matters." (Emphasis added.)

Subsection (c) (1) must be read to indicate that a description of geographic areas is required of restrictive covenants governed by OCGA § 13-8-53 (a). That is because subsection (a) is the only subsection of "this Code section," that is of OCGA § 13-8-53, that can be read to require a description of a geographic area. Subsection (b) does not; it specifies a context in which description of a geographic area is expressly not required; it provides that "[n]o express reference to geographic area" is required of covenants not to solicit a former "employer's customers." Subsection (c) is discussed above. Subsection (d) provides that any restrictive covenant that does not comply with the Act is unenforceable. Subsection (e) exempts agreements to maintain confidential information and trade secrets from the requirement of a geographic-area limit. So that leaves only subsection (a) as the subsection that could require restrictive covenants to include a geographic location. And subsection (a) applies to the restrictive covenant here.

More generally, this conclusion comports with "two well-known and related principles of statutory construction: *expressio unius est exclusio alterius* (expression of one thing implies exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those not

9

mentioned were intended to be excluded)." *Hammock v. State*, 277 Ga. 612, 615 (3) (592 SE2d 415) (2004) (italics in original).

And the General Assembly goes on in OCGA § 13-8-56 (4) to provide that "[a]ny restriction that operates *during* the term of an employment relationship . . . shall not be considered unreasonable because it lacks any specific limitation upon scope of . . . geographic area . . . ." (Emphasis added.) But OCGA § 13-8-53 (a), which applies to restrictions that operate *outside* the term of employment, contains no such exemption from the requirement of a specific limitation of geographic scope. It follows that the General Assembly intended that restrictions that operate outside the term of an employment relationship must include a specific limitation upon the scope of geographic area.

Our Supreme Court's analysis in *Hammock*, 277 Ga. at 615 (3) is instructive. There the court construed the defense of habitation statute, OCGA § 16-3-23. One subsection of that statute expressly excludes the application of the defense between members of the same family or household. The other two subsections do not contain such an exclusion. So the court held that those two subsections must be read to allow application of the defense, even between members of the same family or household.

10

NASB would have us adopt the reasoning of the dissent to *CarpetCare*, 347 Ga. App. at 497. It argues that a restrictive covenant that focuses on people instead of places does not need an explicitly stated geographic limitation. The dissent in *CarpetCare* reasoned that "the lack of a geographic area restriction [was] of no consequence" to the enforceability of the restrictive covenant at issue there because the covenant was "limited in that it applie[d] just to customers with whom the [a]ppellee ha[d] previously worked[.]" *CarpetCare Multiservices*, 347 Ga. App. at 501. (Ray, J., dissenting). NASB similarly argues that the Wimmers' restrictive covenant implicitly has a reasonable geographic limitation: because the restrictive covenant prohibits the Wimmers from soliciting NASB agents, and those agents only operate in the United States, the restrictive covenant has a geographic limitation — the United States — which is reasonable, given that NASB's business is nationwide.

The majority rejected such an argument in *CarpetCare*. 347 Ga. App. at 497. There, the appellant argued that "the term 'geographic area' [in OCGA § 13-8-53 (a)] should not be interpreted literally, and [that] the limitation as to the type of customer [the appellee] could not have contact with under the non-compete covenant should satisfy the geographic area requirement." Id. at 500. But we held that "this interpretation is inconsistent with the language in both OCGA §§ 13-8-53 and

11

13-8-56 and would not afford the statutory text its plain and ordinary meaning." Id. (punctuation omitted).

The restrictive covenant here "does not contain a geographic limitation. Under its terms, [the Wimmers] would be prohibited from [hiring or soliciting] any [NASB employee] anywhere in the world. Such a result is clearly unreasonable under the statute, rendering the [covenant] void and unenforceable." *Lifebrite Laboratories v. Cooksey*, No. 1:15-CV-4309-TWT (III) (A) (2), 2016 U.S. Dist. LEXIS 181823, at *14 (N.D. Ga. Dec. 9, 2016). Thus, we conclude that "the trial court correctly determined that [the covenant] was void and unenforceable." *CarpetCare*, 347 Ga. App. at 500. Accord *Automotive Assur. Group v. Giddens*, No. 1:20-CV-03356-ELR (III) (B) (1) (a), 2020 U.S. Dist. LEXIS 256272, at *12 (N.D. Ga. Dec. 16, 2020) ("[B]ecause the plain text of the non-compete covenant contains no geographic limitation (by reference or otherwise), it fails as a matter of Georgia law.") (citing *CarpetCare*, 247 Ga. App. at 497). See also OCGA §§ 13-8-53 (d) ("[a]ny restrictive covenant not in compliance with [OCGA §§ 13-8-50 through 13-8-59] is unlawful and is void and unenforceable"); OCGA § 13-8-54 (b) ("[i]n any action concerning enforcement of a restrictive covenant, a court shall not enforce a restrictive covenant unless it is in compliance with the provisions of Code Section 13-8-53"). Because the

12

covenant "at issue on appeal [is] unenforceable, [the Wimmers] cannot be held liable for interfering with [it]." *American Plumbing Professionals v. Servestar*, 363 Ga. App. 392, 394 (870 SE2d 518) (2022).

The dissent here observes that "non-recruitment restrictions do not fall neatly into" OCGA § 13-8-53 and on that basis shifts to discussions of policy in case law that predates the Act and in a well-regarded treatise. That's not our role. "[I]f the statutory text is 'clear and unambiguous,' we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." *Deal v. Coleman*, 294 Ga. 170, 173 (1) (751 SE2d 337) (2013).

The statutory text before us is clear and unambiguous. As detailed above, the Act declares unenforceable restrictive covenants that operate after the end of the parties' business relationship and that lack a geographic limitation. OCGA §§ 13-8-53 (a), (d).

It is true that the statute directs that geographic descriptions be read forgivingly. It provides, "*Whenever a description of* activities, products, or services, or *geographic areas, is required by this Code section, any description that provides fair notice* of the maximum reasonable scope of the restraint *shall satisfy such requirement*, even if the description is generalized or could possibly be stated more

13

narrowly to exclude extraneous matters." OCGA § 13-8-53 (c) (1) (emphasis added). The plain meaning of that statutory text is that descriptions will be read forgivingly, but descriptions are required. That text does not authorize courts to infer implied descriptions where, as here, the restrictive covenant provides no description.

The statute provides two exceptions to the requirement of a geographic limitation: restrictions on solicitation of customers and protection of trade secrets. OCGA §§ 13-8-53 (b), (e). But those exceptions are not applicable here.

It is of no consequence that there are strong policy arguments for a different rule or that those policy arguments had been adopted in judicial decisions that preceded the Act.

> [W]e should refrain from proclaiming the existence of public policy provisions that our legislature has chosen not to enact and that run contrary to our precedent. Here, by its enactment of [the Act], the General Assembly has declared the public policy of the state with respect to those contracts that should not be enforced by the courts. . . . It is fundamental that matters of public policy are entrusted to the General Assembly, and not this court. It is equally fundamental that it is not for this Court to expand or contract the scope of the General Assembly's legislative enactments, unless the policy choices it makes by enacting statutes exceed its constitutional authority. No constitutional claim has been made in this case, and under the circumstances present

14

here, there is no justification for interfering with the public policy choices made by the General Assembly.

*BPG Inspection, LLC v. Omstead*, 367 Ga. App. 128, 135-136 (1) (883 SE2d 593) (2023) (citations and punctuation omitted).

3. *Blue pencil.*

NASB argues that the state-wide business court erred by declining to blue-pencil the non-solicitation-of-employees restrictive covenant. When the state-wide business court declined to use his blue-pencil authority, he reasoned that to exercise that authority would require him to add a material term instead of simply narrowing or severing impermissible language or terms. Reviewing that decision de novo, see *Junior*, 313 Ga. at 423 (2) (statutory interpretation involves questions of law and is reviewed de novo), we hold that the state-wide business court did not err.

Under the former law, in most cases Georgia courts could not modify restrictive covenants. See *Coleman v. Retina Consultants*, 286 Ga. 317, 320 (1) (687 SE2d 457) (2009) ("Even if only a portion of a non-compete clause in an employment contract would be unenforceable, the entire covenant must fail because this [c]ourt will not apply the blue-pencil theory of severability to such restrictive covenants.").

15

Blue-penciling was allowed, however, in the context of contracts for the sale of a business. But that authority was limited. "In those contracts, Georgia courts were allowed to blue-pencil unreasonable restrictive covenants, but that meant only the removal of offending language." *Lifebrite Laboratories*, No. 1:15-CV-4309-TWT (III) (A) (2), 2016 U.S. Dist. LEXIS 181823, at *17-18. See, e.g., *Atlanta Bread Co. Intl. v. Lupton-Smith*, 285 Ga. 587, 591 (4) (679 SE2d 722) (2009); *New Atlanta Ear, Nose & Throat Assoc. v. Pratt*, 253 Ga. App. 681, 682 (2) (560 SE2d 268) (2002); *Waste Mgmt. of Metro Atlanta v. Appalachian Waste Systems*, 286 Ga. App. 476, 480-481 (1) (649 SE2d 578) (2007).

In *Hamrick v. Kelley*, 260 Ga. 307 (392 SE2d 518) (1990), for example, our Supreme Court explained that

> [a] trial court may apply the "blue pencil" method where a covenant not to compete ancillary to a contract for the sale of a business designates an area greater than reasonably necessary to protect the purchaser. . . . [A] trial court may not under the guise of the "blue pencil" method *reform* a contract which is otherwise unenforceable by reason of vagueness. . . . The "blue pencil" marks, but it does not write. It may limit an area, thus making it reasonable, but it may not rewrite a contract void for vagueness, making it definite by designating a new, clearly demarcated area.

16

Id. at 307-308 (punctuation omitted; emphasis in original). See also *New Atlanta Ear, Nose & Throat Assoc.*, 253 Ga. App. at 682 (2) ("if the blue pencil cannot rewrite a vague territorial limitation, where the parties at least tried to describe a territory, it cannot insert an absent territorial limitation, where the parties consciously chose not to include one"). Cf. *Refresco Beverages US v. Califormulations*, No. 4:20-CV-181 (CDL) (III) (B) (1), 2021 U.S. Dist. LEXIS 180600, at *33 (M.D. Ga. Sep. 22, 2021) (geographic restriction that prevented competition in Canada, the United States, Mexico, and the United Kingdom was overbroad under the Act, since plaintiff did not allege that it conducts business outside the United States, but it was "easily modified to comply with Georgia law[ b]y striking the provision restricting competition in Canada, Mexico, and the United Kingdom").

Now, however, the Act authorizes courts to "modify" restrictive covenants. OCGA §§ 13-8-53 (d); 13-8-54 (b). So the question before us whether the scope of that authority exceeds their authority to blue-pencil contracts for the sale of businesses under the former law. We hold that it does not, that the rule set out in *Hamrick v. Kelley*, 260 Ga. 307-308 still obtains. "The 'blue pencil' marks, but it does not write." Id. at 308.

17

Two provisions of the Act give courts the authority to "modify" restrictive covenants. OCGA § 13-8-53 (d) states "that a court may *modify* a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties." (Emphasis added). OCGA § 13-8-54 (b) states that "if a court finds that a contractually specified restraint does not comply with the provisions of [the Act], then the court may *modify* the restraint provision and grant only the relief reasonably necessary to protect such interest or interests and to achieve the original intent of the contracting parties to the extent possible." (Emphasis added).

"Modify" is a defined term. The Act defines it as "to make, to cause, or otherwise to bring about a modification." OCGA § 13-8-51 (12). It defines "modification" as "the limitation of a restrictive covenant to render it reasonable in light of the circumstances in which it was made[,] includ[ing s]evering or removing that part of a restrictive covenant that would otherwise make the entire restrictive covenant unenforceable. . . ." OCGA § 13-8-51 (11) (A).

The absence of the words "adding" or "supplying" or something similar in the definition of "modification" under the Act indicates that the General Assembly meant to retain the limits on blue-penciling our Supreme Court had imposed in the limited

18

context in which blue-penciling was allowed before the Act (contracts for the sale of a business).

So the state-wide business court did not err by declining to add a geographic scope limitation to the non-solicitation-of-employees restrictive covenant.

*Judgment affirmed. Brown, J. concurs. Markle, J., dissents.*

.

A23A0162. NORTH AMERICAN SENIOR BENEFITS, LLC

v. WIMMER et al.

MARKLE, Judge, dissenting.

The majority concludes that the restrictive covenant in this case is unenforceable because it does not contain an explicit geographic limitation. Because I conclude that the covenant satisfies the statutory requirements, I respectfully dissent.

The provision at issue here is a non-recruitment covenant, which limits the Wimmers' ability to recruit NASB's employees. See *Albany Bone & Joint Clinic, P.C. v. Hajek*, 272 Ga. App. 464, 466, n. 4 (612 SE2d 509) (2005). The specific provision instructs that

> for a period of two (2) years following termination of said contract, Licensed Agent shall not directly or indirectly: (a) solicit for the provision services or employment any employee, agent, or independent contractor of NASB, (b) advise or recommend to any other person that they employ or solicit for provision of services any employee or independent contractor of NASB, (c) encourage or advise such employees, agents or independent contractors to sever, discountinue or

not renew any agreement or relationship to NASB, or (d) otherwise establish or seek to establish any business relationship with any such employee, agent or independent contractor relating to the sale of insurance products.

The Restrictive Covenant Act (the Act), OCGA § 13-8-53, which applies to provisions such as this, requires that restrictions be reasonable in scope, time, and geographic limitation. OCGA § 13-8-53 (a); see also *Belt Power v. Reed*, 354 Ga. App. 289, 293 (2) (a) (840 SE2d 765) (2020) (restrictive covenant act applies to non-recruitment provisions); OCGA § 13-8-51 (15) (defining restrictive covenant to include an agreement to protect a business's interest in its employees). Although the parties agree that subsection (a) of OCGA § 13-8-53 applies here, non-recruitment restrictions do not fall neatly into that provision. See *CMGRP v. Gallant*, 343 Ga. App. 91, 100 (3) (806 SE2d 16) (2017). "Covenants against employing personnel of a former employer, or soliciting them for employment, have received relatively little attention, and the law appears to be somewhat undeveloped," and there are cases in which "such covenants, . . . are considered to be separate from noncompetition . . . covenants[.]" John K. Larkins, Jr., *Ga. Contracts: Law and Litigation*, § 8:10 (2d ed., updated September 2022). Indeed, our cases have long-recognized a distinction between non-solicitation and non-recruitment provisions. See *CMGRP*, 343 Ga. App.

2

at 96 (2) (a), n. 15 (citing cases). To that end, in pre-Act cases, our courts frequently upheld non-recruitment provisions that did not include an express geographic limitation. Id.; see also *American Anesthesiology of Ga. v. Northside Hosp.*, 362 Ga. App. 350, 362-363 (2) (a) (867 SE2d 531) (2021); *Sanford v. RDA Consultants*, 244 Ga. App. 308, 311 (2) (535 SE2d 321) (2000). As we explained,

> [i]n the context of employee-poaching, however, it matters not whether one's employee is hired away to work across the street or across the globe — the harm to the employer is the same in either case, as is implicitly recognized in the Agreement provisions to the effect that recruiting and training of each party's personnel is a costly and time consuming endeavor. . . . [A] territorial limit would be largely (if not entirely) superfluous, as the very nature of the covenants at issue here . . . is necessarily narrowly limited in a manner that would be largely analogous to a territorial limitation. Consequently, territorial limits play no role in our analysis on the particular facts presented here[.]

(Citations and punctuation omitted.) *American Anesthesiology of Ga.*, 362 Ga. App. at 362-363 (2) (a); see also *Chaichimansour v. Pets Are People Too, No. 2*, 226 Ga. App. 69, 71 (1) (485 SE2d 248) (1997) ("if the scope of prohibited behavior is narrow enough . . . , the covenant may be reasonable even if it has no territorial limitation").

This same rationale applies to cases decided under the Act. But contrary to the majority's view, this is not a matter of policy; it is a matter of statutory construction.

3

Indeed, the General Assembly recognized the rationale when it drafted the Act and thus it provided that "[w]henever a description of . . . geographic areas [] is required . . . *any description* that provides fair notice of the maximum reasonable scope of the restraint shall satisfy such requirement[.]") (Emphasis supplied.) OCGA § 13-8-53 (c) (1); see also *American Plumbing Professionals v. ServeStar*, 363 Ga. App. 392, 394-395, 397 (870 SE2d 518) (2022). The majority acknowledges this statutory provision yet nevertheless concludes that only an explicit description of geographic limitation would suffice. Construing the statute as the majority does effectively renders § 13-8-53 (c) (1) meaningless. *Graham v. McKesson Information Solutions*, 279 Ga. App. 364, 366 (631 SE2d 424) (2006) (" appellate courts must construe statutes to give sensible and intelligent effect to all of their provisions and to refrain from any interpretation which renders any part of the statutes meaningless.") (citations and punctuation omitted). This we cannot do.

Instead, when we give meaning to *all* the provisions of the statute, we learn that even where the statute requires a geographic limitation, any description that notifies the parties of the restriction is sufficient. OCGA § 13-8-53 (c) (1). The non-recruitment provision in the Wimmers' contract meets this requirement. The limitation here is confined to specific people: the Wimmers could not solicit any

4

employee, agent, or independent contractor or interfere with NASB's relationship with any employee, agent, or independent contractor. Because the terms of the restrictive covenant are specific as to *whom* the Wimmers may not solicit, it included a description and gave fair notice to the parties, thereby satisfying the purpose of the Act. See OCGA § 13-8-53 (c) (1); *American Plumbing Professionals*, 363 Ga. App. at 397. Any further description of geographical limitation would be unnecessary. See *American Anesthesiology*, 362 Ga. App. at 362 (2) (a); cf. OCGA § 13-8-56 (2) (B) ("In determining the reasonableness of a restrictive covenant . . . , the court shall make the following presumptions: . . . . A geographic territory which includes the areas in which the employer does business at any time during the parties' relationship . . . is reasonable, provided that: . . .The agreement contains a list of particular competitors as prohibited employers for a limited period of time after the term of employment or a business or commercial relationship[.]").

Our interpretations of restrictive covenants must "comport with the reasonable intent and expectations of the parties to the covenant and in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." OCGA § 13-8-54 (a). Upholding the provision here is

consistent with that statutory mandate. For these reasons, I would find the restrictive

covenant enforceable, and thus would reverse the business court's decision.